**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**WILLIAM D. SANFORD**                                                            **PLAINTIFF**

**VS.**                                                            **Case No. 1:08cv107**

**ZURICH AMERICAN INSURANCE COMPANY**                  **DEFENDANT**

## ORDER

This cause comes before the court on the competing motions of the parties for summary judgment, pursuant to Fed. R. Civ. P. 56. The court, having reviewed the memoranda and submissions of the parties, concludes that plaintiff's motion should be denied and that defendant's motion should be granted.

This is an ERISA case seeking damages arising out of defendant Zurich American Insurance Company's ("Zurich") denial of a claim for accidental death benefits pursuant to two group insurance policies issued to Sysco Corporation. The decedent Peggie Sanford ("Sanford") was employed by a Sysco affiliate and thus qualified for the accidental death and dismemberment ("AD&D") coverage afforded under both policies. William D. Sanford (the "Plaintiff") was designated as the sole beneficiary of Sanford's death benefits. On August 6, 2006, Sanford drowned at Pickwick Lake, and the plaintiff submitted a claim for accidental death benefits in the amount of $227,000. Zurich, which serves as ERISA Claims Fiduciary, denied benefits on the basis of an "intoxication" exclusion in both policies, concluding that ethyl alcohol intoxication contributed to Peggie's death. Feeling aggrieved, plaintiff filed this action on March 27, 2008, in the Circuit Court of Tishomingo County, and Zurich subsequently removed the case to this court. The parties have each filed motions for summary judgment, contending that there exists no genuine issue of fact and

that they are entitled to judgment as a matter of law.

Prior to addressing the facts of this case, the court initially notes that plaintiff's state law claims are pre-empted by ERISA, which limits this action to one for benefits. 29 U.S.C. § 1132(a)(1)(B). Moreover, ERISA provides that Zurich's denial of the subject claim is reviewable only for an abuse of discretion, since the plan in this case provides Zurich with "the discretionary authority to determine eligibility for benefits and to construe the terms of the plan." *See Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998). In defending its decision to deny coverage based upon the "intoxication" exclusion in the ERISA policies, defendant describes the facts of the case as follows:

> Sanford and a companion, Albert McAlexander ("McAlexander"), died on or about August 6, 2006, while on a leisure outing at Pickwick Lake. Several witnesses observed Sanford and McAlexander aboard a pontoon boat near the waterfalls area of Pickwick Lake during the daylight hours on August 6. They were last observed "dancing and playing" aboard the boat at approximately 6:00 p.m. A short time later, the boat was found adrift and unmanned with the engine running, the radio playing, and a large dog onboard. A search was immediately launched by officers representing the Mississippi Department of Wildlife, Fisheries & Parks, the Tishomingo County Sheriff's Department, and the Tennessee Valley Authority. On the morning of August 7, the bodies of Sanford and McAlexander were discovered floating in the lake.
>
> There were a number of other boaters in the area of the waterfalls during the period that Sanford and McAlexander would have entered the water. However, no witnesses saw Sanford or McAlexander leave their boat or enter the water, and no one heard any fighting, yelling, or cries for help. Sanford's body was sent to Jackson for an autopsy and forensic analysis. The autopsy revealed that Sanford had died as a result of freshwater drowning. Additionally, a toxicological examination of her blood was positive for ethyl alcohol at a level of 0.161 g/dl. In searching and inventorying the contents of the boat, officers had discovered beer and vodka. There was no evidence of foul play. By all accounts, Sanford and McAlexander enjoyed a good relationship. Likewise, as noted above, none of the other boaters in the area observed any yelling or cries for help. The available evidence led officers to conclude that Sanford had fallen overboard and drowned. The official cause of death was listed as freshwater drowning with a contributing cause of ethyl alcohol intoxication.

Citing these facts, Zurich denied plaintiff's claim for benefits based upon a policy exclusion which provided that:

> **C.** No benefits will be paid for a Covered Loss contributed to, either directly or indirectly, by a Covered Person's being:
> **1.** Intoxicated.
> a. A Covered Person will be conclusively presumed to be intoxicated if the level of alcohol in his/her blood exceeds the amount at which a person is presumed, under the law of the locale in which the accident occurred, to be intoxicated if operating a motor vehicle.
> **b.** An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items shall be considered proof of the Covered Person's intoxication.
> **2.** Under the influence of any controlled substance, unless such controlled substance was prescribed by a physician and taken in accordance with the prescribed dosage.

In setting forth his own theories regarding the cause of Peggie's death, plaintiff writes as follows:

> The Plaintiff submitted supplemental information to Defendant Zurich's ERISA Committee, including four sworn affidavits from Cynthia Hodges, Robert B. Moorman, Tam're Moorman, and William Sanford (the Plaintiff), respectively, which stated that Peggie Sanford was completely incapable of swimming and which stated that if Peggie Sanford fell into water she would drown unless she was saved by another person. The Plaintiff also provided Defendant Zurich's ERISA Committee with the results of an investigation conducted by Terry R. Cox, a certified legal investigator. Cox interviewed the following individuals: Ricky Cornelison, the MDWFP officer who prepared the *Official Water Accident Report*; Stewart M. "Mack" Wilemon, the Tishomingo County Medical Examiner Investigator; and, Terry Burcham, a law enforcement officer with the Tennessee Valley Authority Police Department.
>
> The *Official Water Accident Report*, which was prepared following Cornelison's investigation into the drowning death of Peggie Sanford, recites that the cause of death was drowning, that Sanford was a non-swimmer, and that "what victim was doing" at the time of the drowning is "unknown." Notably, the pre-printed portion of the *Official Water Accident Report* contains a section captioned "Probable Cause of Accident" which lists common possible causes of accidents, to-wit: Swimming in unknown waters; Physical failure or exhaustion; Non-proficient swimmer; Fell through ice; Fell from bridge; Fell from bank; Fell

from dock; Fell from poolside; and, Suicide or attempt. Also listed as a "Probable Cause of Accident" on the pre-printed *Official Water Accident Report* form is "Other." When Cornelison prepared the *Official Water Accident Report*, he placed a check by "Other" under "Probable Cause of Accident" and did not include any further explanatory notation.

The January 26, 2007, letter from Defendant Zurich to Plaintiff William D. Sanford in which Zurich denies the claim for Peggie Sanford's death benefits states (in the fourth full paragraph on page 2) as follows: "The police crime report also states that alcohol was a factor in the incident." This statement is false. Cornelison's *Official Water Accident Report* actually states: "A small amount of vodka, beer and a green leafy substance that appeared to be marijuana along with paraphernalia were located on the boat leading officers to believe that the victims *may* have been under the influence." (Emphasis added.) This statement reflects nothing more than speculation. No where within Cornelison's twenty-seven page *Official Water Accident Report* it is affirmatively stated that "alcohol was a factor in the incident" as claimed by Defendant Zurich. When Cornelison was interviewed by Terry Cox, the certified legal investigator, Cornelison admitted that there is no evidence to indicate that alcohol caused or contributed to the drowning death of Peggie Sanford.

The claim file made available to the Plaintiff by Defendant Zurich indicates that Zurich's investigators never spoke directly with Cornelison. Stewart M. "Mack" Wilemon, the Tishomingo County Medical Examiner Investigator, prepared the written *Report of Death Investigation* as required by Mississippi Medical Examiner Actof 1986 (MISS. CODE ANN. §41-61-51, *et seq.*). Wilemon's *Report of Death Investigation* recites the "Probable Cause of Death" as "Freshwater Drowning" and recites "Ethyl Alcohol Intoxication" as a "Contributing factor" in Peggie Sanford's death. Wilemon's report also recites:

> Subject was found floating in lake near a rocky shoreline. Thought to have been occupant of pontoon boat which was found unoccupied last p.m. That to have been in company of male subject not accounted for at time of Ms. Sanford's discovery. *No known witnesses to subject's distress or demise*. 8/30 Subject believed to have fallen overboard due to Ethyl Alcohol Intoxication. Results received 8/30/06

When Wilemon was interviewed by Cox, however, Wilemon agreed that there is no evidence to indicate that alcohol caused or contributed to the drowning death of Peggie Sanford. Notably, the Report of Death Investigation specifically states that Peggie Sanford "could not swim." Again, the statement "Subject believed to have fallen overboard due to Ethyl Alcohol Intoxication" is nothing more than mere speculation.

Terry Burcham is a law enforcement officer with the Tennessee Valley Authority ("TVA") Police Department who produced a written *TVA Police Crime Report* relating to the death of Peggie Sanford. Burcham's report recites law enforcement officers found "alcohol and marijuana" on the pontoon boat, but Burcham's report contains no statement whatsoever regarding whether ethyl alcohol intoxication may have caused or contributed to the drowning death of Peggie Sanford. WhenBurcham was interviewed by Cox, Burcham agreed that there is no evidence to indicate that alcohol caused or contributed to the drowning death of Peggie Sanford.

In rebutting these arguments, defendant writes as follows:

> While not contesting Zurich's determination that Peggie Sanford ("Sanford") was intoxicated at the time she drowned, Plaintiff does challenge the determination by Zurich that Sanford's intoxication contributed, either directly or indirectly, to her death. Plaintiff cites to evidence that Sanford was not able to swim and asserts that this inability to swim, rather than intoxication, was the sole cause of her death. Plaintiff also notes that no onesaw Sanford enter the water and poses several different explanations as to how Sanfordcould have entered the water regardless of whether she was impaired. According to the Plaintiff, because no one observed Sanford enter the water, it is simply impossible todetermine whether intoxication was a factor in her death.
>
> Contrary to Plaintiffs' argument, the evidence in the record supports Zurich's determination that intoxication was a factor in Sanford's death. In order to prevail in this action, Zurich need not establish that intoxication was the only cause or even the predominate cause of Sanford's death. Rather, the Court is compelled to uphold Zurich's determination if the administrative record contains substantial evidence that intoxication contributed, either directly or indirectly, to Sanford's death. It is inconsequential for purposes of the Court's review that there may have been other, more direct causes. Clearly, Zurich did not abuse its discretion because the underlying evidence supports its denial of Plaintiff's claim for benefits.

Ultimately, it seems clear that no party to this litigation has definitive proof regarding exactly how and why Peggie Sanford tragically drowned. Plaintiff has offered alternate explanations for Peggie's drowning, including 1) that she may have been thrown into the lake by the negligence of the boat's operator; 2) that she may have been thrown into the water by McAlexander during horseplay; and (3) that large waves caused by a thunderstorm may have

caused her to fall off the boat. This court can certainly not exclude the possibility that one of these explanations may be accurate.

The court agrees with defendant, however, that the highly deferential "abuse of discretion" standard which applies in this case, along with the fact that the policies in this case exclude coverage in cases where intoxication "contributed ... either directly or indirectly" to the covered loss indicates that Zurich's decision to deny benefits must be upheld. It would be very difficult for this court to conclude that Zurich abused its discretion in concluding that intoxication was at least a contributing factor in Peggie's death when 1) her post-mortem blood test was positive for ethyl alcohol at a level of 0.161 g/dl; 2) Tishomingo County Medical Examiner Investigator Stewart M. Wileman explicitly stated in Peggie's amended death certificate that "ethyl alcohol intoxication" was a "significant condition ... contributing" to her death.[1] The court readily agrees with plaintiff that there are other possible explanations for Peggie's death which do not involve intoxication, but there is clearly substantial evidence supporting Zurich's conclusion that intoxication was a contributing factor in her death. Zurich's motion for summary judgment will therefore be granted, and plaintiff's motion will be denied.

---

[1] In the court's view, this would be true even under the application of the somewhat less deferential standard of review which would apply if this court were to conclude that Zurich had a conflict of interest by serving as both plan administrator and insurer in this case. *See e.g.*, *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 541 (5th Cir. 2007). Wileman had no such conflict of interest, and he independently concluded that intoxication was a contributing factor in Peggie's death.

It is therefore ordered that Zurich's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

A separate judgment will be issued this date, pursuant to Fed. R. Civ. P. 58.

THIS the 15th day of September, 2009.

                                **/s/ MICHAEL P. MILLS**
                                **CHIEF JUDGE**
                                **UNITED STATES DISTRICT COURT**
                                **NORTHERN DISTRICT OF MISSISSIPPI**